1

2

3

4                IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                        FOR THE COUNTY OF JOSEPHINE

| | | |
|---|---|---|
| 6 | DONALD L. OLSON as TRUSTEE OF THE OLSON LIVING TRUST, ) | No. |
| 7 | ) Plaintiff, ) | COMPLAINT |
| 8 | ) vs. ) | (Breach of Contract) |
| 9 | ) | PRAYER AMOUNT: $69,604.39 |
| 10 | CHICAGO TITLE INSURANCE ) COMPANY, successor to TICOR TITLE ) INSURANCE COMPANY ) | CLAIM NOT SUBJECT TO MANDATORY ARBITRATION |
| 11 | ) Defendant. ) | |
| 12 | _____ ) | |

13        Plaintiff alleges as follows:

14                                1.

15        Plaintiff is the owner of real properties located at 1711 Softwood Way, Grants

16 Pass, Oregon 97526, 1115 Catherine Way, Grants Pass, Oregon 97526, 1726 Kids

17 Way, Grants Pass, Oregon 97526, and 1736 Kids Way, Grants Pass, Oregon 97526.

18                                2.

19        At all material times, Ticor Title Insurance Company was a California

20 corporation which issues real property title insurance policies.  At the time when the

21 policies were issued, Defendant was a licensed insurance producer, and transacted

22 insurance in the state of Oregon.  At all material times, Defendant, Chicago Title

23 Insurance Company was the successor in interest to Ticor Title Insurance Company.

24                                3.

25        On or about May 1, 2008, Defendant issued lender's Policy No. 26-62822, in

26 connection with the real property at 1711 Softwood Way, and identifying Plaintiff as

27 the Insured.  A copy of the policy is attached hereto as "Exhibit 1" and is thereby

SORENSON, RANSOM & FERGUSON, LLP
ATTORNEYS AT LAW
133 NW 'D' STREET
GRANTS PASS, OR 97526
(541) 476-3883   FAX (541) 474-4495

1      incorporated.  At the time the policy was issued, Plaintiff was the beneficiary of a first

2      Trust Deed on the property, which is recorded in the Official Records of Josephine

3      County as Instrument No. 2008-017530.  Subsequently, the grantor of the Trust Deed

4      defaulted in its obligation to Plaintiff, and on or about May 25, 2011 the real property

5      was conveyed to Plaintiff via a deed in lieu of foreclosure, which was recorded in the

6      Official Records of Josephine County as Instrument No. 2011-006124.

7                                              4.

8          In early June of 2011, Plaintiff discovered that prior to the issuance of the

9      insurance policy, 1711 Softwood Way was encumbered by System Development

10      Charges, (hereinafter: "SDC's") which were not disclosed in Schedule B of the Policy

11      as being excepted from coverage.  At the same time, Plaintiff discovered that prior to

12      the issuance of the insurance policy, 1711 Softwood Way was encumbered by

13      Advanced Financed District Charges, (hereinafter: "AFD's"), which were not disclosed

14      on Schedule B of the Policy as an exception to coverage, sufficient to put Plaintiff on

15      notice of a pre-existing financial obligation.

16                                               5.

17          On or about April 29, 2008, Defendant issued lenders Policy No. 26-62819, in

18      connection with the real property at 1115 Catherine Way, and identifying Plaintiff as

19      the Insured.  A true copy of the policy is attached hereto as "Exhibit 2" and is thereby

20      incorporated.  At the time the policy was issued, Plaintiff was the beneficiary of a first

21      Trust Deed on the property, which was recorded in the Official Records of Josephine

22      County as Instrument No. 2008-007139.  Subsequently, the grantor of the Trust Deed

23      defaulted on its obligation to Plaintiff, and on or about May 25, 2011, the real

24      property was conveyed to Plaintiff via a deed in lieu of foreclosure, which was

25      recorded in the Official Records of Josephine County as Instrument No. 2011-006123.

26      ///

27      ///

SORENSON, RANSOM & FERGUSON, LLP
ATTORNEYS AT LAW
133 NW 'D' STREET
GRANTS PASS, OR  97526
(541) 476-3883    FAX (541) 474-4495

Page 2-  COMPLAINT

6.

In early June of 2011, Plaintiff became aware that prior to the issuance of the insurance policy 1115 Catherine was encumbered by SDC's, which were not disclosed in Schedule B of the Policy as being excepted from coverage.  At the same time, Plaintiff discovered that prior to the issuance of the insurance policy, 1115 Catherine Way was encumbered by AFD's, which were not disclosed on Schedule B of the Policy as an exception to coverage, sufficient to put Plaintiff on notice of a pre-existing financial obligation.

7.

On or about August 30, 2007, Defendant issued lenders Policy No. 26-60393, in connection with the real property at 1726 Kids way, and identifying Plaintiff as the Insured as to an undivided 50% interest.  A true copy of the policy is attached hereto as "Exhibit 3" and is thereby incorporated.  At the time the policy was issued, Plaintiff was the beneficiary of a first Trust Deed as to an undivided 50% interest.  The Trust Deed was recorded in the Official Records of Josephine County as Instrument No. 2007-017096.  Subsequently, the grantor of the Trust Deed defaulted on its obligation to Plaintiff, and on or about May 25, 2011 the real property was conveyed to Plaintiff alone via a deed in lieu of foreclosure, which was recorded in the Official Records of Josephine County as Instrument No. 2011-006125.

8.

In early June of 2011, Plaintiff became aware that prior to the issuance of the insurance policy 1726 Kids Way was encumbered by SDC's, which were not disclosed in Schedule B of the Policy as being excepted from coverage.  At the same time, Plaintiff discovered that prior to the issuance of the insurance policy, 1726 Kids Way was encumbered by AFD's, which were not disclosed on Schedule B of the Policy as an exception to coverage, sufficient to put Plaintiff on notice of a pre-existing financial obligation.

SORENSON, RANSOM & FERGUSON, LLP
ATTORNEYS AT LAW
133 NW 'D' STREET
GRANTS PASS, OR  97526
(541) 476-3883    FAX (541) 474-4495

1          9.

2          On or about November 19, 2008, Defendant issued lenders Policy No. 26-

3     64437, in connection with the real property at 1736 Kids Way, and identifying

4     Plaintiff as the Insured.  A true copy of the policy is attached hereto as "Exhibit 4" and

5     is thereby incorporated.  At the time the policy was issued, Plaintiff was the

6     beneficiary of a first Trust Deed, recorded in the Official Records of Josephine County

7     as Instrument No. 2008-017530.  Subsequently, the grantor of the Trust Deed

8     defaulted in its' obligations to Plaintiff, and on or about May 25, 2011 the real

9     property was conveyed to Plaintiff via a deed in lieu of foreclosure, which was

10    recorded in the Official Records of Josephine County as Instrument No. 2011-006126.

11         10.

12         In early June of 2011, Plaintiff became aware that prior to the issuance of the

13    insurance policy 1736 Kids Way was encumbered by SDC's, which were not disclosed

14    in Schedule B of the Policy as being excepted from coverage.  At the same time,

15    Plaintiff discovered that prior to the issuance of the insurance policy, 1736 Kids Way

16    was encumbered by AFD's, which were not disclosed on Schedule B of the Policy as an

17    exception to coverage, sufficient to put Plaintiff on notice of a pre-existing financial

18    obligation.

19         11.

20         The "Covered Risks" section of each policy is identical, and provides that

21    subject to the exclusions from coverage contained in Schedule B, as of the date of the

22    policy, Defendant would insure Plaintiff against any loss or damage sustained or

23    incurred by reason of:

24              "Any defect in or lien or encumbrance of the Title.  This Covered Risk
                includes but is not limited to insurance against loss from [T]he lien of
25              real estate taxes or assessments imposed on the Title by a governmental
                authority due or payable, but unpaid."  Covered Risks 2(b).
26

27    ///

SORENSON, RANSOM & FERGUSON, LLP
ATTORNEYS AT LAW
133 NW 'D' STREET
GRANTS PASS, OR  97526
(541) 476-3883    FAX (541) 474-4495

12.

On or about May 20, 2013, Plaintiff submitted a Proof of Loss to Defendant as to each and every loss, and has performed all other obligations under the policies. Defendant or Defendant's successor has denied each of Plaintiff's claims under the policies.

FIRST CLAIM FOR RELIEF

(Breach of Contract)

13.

Plaintiff re-alleges Paragraphs 1 through 12 above.

14.

Plaintiff entered into an insurance contract with Defendant.  Defendant agreed to insure Plaintiff against any defects caused by any liens or encumbrances on the title of 1711 Softwood Way, caused by the real estate of real estate taxes or assessments imposed by a governmental authority due or payable, but unpaid.  Despite this agreement, Defendant refused to pay Plaintiff's losses related to a covered risk.

15.

Plaintiff is the beneficiary of the insurance contract and has the right to receive loss payment in these circumstances.

16.

Plaintiff has performed all of Plaintiff's obligations under the terms of the Policy.  Plaintiff has presented Proofs of Loss to Defendant, and presented claims under the Policy with Defendant, which have been denied.  Plaintiff has exhausted Plaintiff's remedies under the Policy, short of litigation.

17.

Defendant has breached its contract with Plaintiff by failing to pay Plaintiff's claims in accordance with the terms of the Policy.  Plaintiff has been damaged in the amount of $15,594.95, or such other amount as may be proven at trial, because of

SORENSON, RANSOM & FERGUSON, LLP
ATTORNEYS AT LAW
133 NW 'D' STREET
GRANTS PASS, OR  97526
(541) 476-3883    FAX (541) 474-4495

1    Defendant's failure to pay for damages which are covered under the Policy.

2                         SECOND CLAIM FOR RELIEF

3                            (Breach of Contract)

4                                    18.

5         Plaintiff re-alleges Paragraphs 1 through 17 above.

6                                    19.

7         Plaintiff entered into an insurance contract with Defendant.  Defendant agreed

8    to insure Plaintiff against any defects caused by liens or encumbrances on the title of

9    1115 Catherine Way, caused by the real estate of real estate taxes or assessments

10   imposed by a governmental authority due or payable, but unpaid.  Despite this

11   agreement, Defendant refused to pay Plaintiff's losses related to a covered risk.

12                                   20.

13        Plaintiff is the beneficiary of the insurance contract and has the right to receive

14   loss payment in these circumstances.

15                                   21.

16        Plaintiff has performed all of Plaintiff's obligations under the terms of the

17   Policy.  Plaintiff has presented Proofs of Loss to Defendant, and presented claims

18   under the Policy with Defendant, which have been denied.  Plaintiff has exhausted

19   Plaintiff's remedies under the Policy, short of litigation.

20                                   22.

21        Defendant has breached its contract with Plaintiff by failing to pay Plaintiff's

22   claims in accordance with the terms of the Policy.  Plaintiff has been damaged in the

23   amount of $15,604.39, or such other amount as may be proven at trial, because of

24   Defendant's failure to pay for damages which are covered under the Policy.

25   ///

26   ///

27   ///

SORENSON, RANSOM & FERGUSON, LLP
ATTORNEYS AT LAW
133 NW 'D' STREET
GRANTS PASS, OR  97526
(541) 476-3883    FAX (541) 474-4495

1                 THIRD CLAIM FOR RELIEF

2                   (Breach of Contract)

3                     23.

4      Plaintiff re-alleges Paragraphs 1 through 22 above.

5                     24.

6      Plaintiff entered into an insurance contract with Defendant.  Defendant agreed

7  to insure Plaintiff against any defects caused by liens or encumbrances on the title of

8  1726 Softwood Way, caused by the real estate of real estate taxes or assessments

9  imposed by a governmental authority due or payable, but unpaid.  Despite this

10  agreement, Defendant refused to pay Plaintiff's losses related to a covered risk.

11                    25.

12     Plaintiff is the beneficiary of the insurance contract and has the right to receive

13  loss payment in these circumstances.

14                    26.

15     Plaintiff has performed all of Plaintiff's obligations under the terms of the

16  Policy.  Plaintiff has presented Proofs of Loss to Defendant, and presented claims

17  under the Policy with Defendant, which have been denied.  Plaintiff has exhausted

18  Plaintiff's remedies under the Policy, short of litigation.

19                    27.

20     Defendant has breached its contract with Plaintiff by failing to pay Plaintiff's

21  claims in accordance with the terms of the Policy.  Plaintiff has been damaged in the

22  amount of $19,103.03, or such other amount as may be proven at trial, because of

23  Defendant's failure to pay for damages which are covered under the Policy.

24               FOURTH CLAIM FOR RELIEF

25                   (Breach of Contract)

26                     28.

27     Plaintiff re-alleges Paragraphs 1 through 27 above.

SORENSON, RANSOM & FERGUSON, LLP
ATTORNEYS AT LAW
133 NW 'D' STREET
GRANTS PASS, OR 97526
(541) 476-3883    FAX (541) 474-4495

1                                    29.

2       Plaintiff entered into an insurance contract with Defendant.  Defendant agreed

3   to insure Plaintiff against any defects caused by liens or encumbrances on the title of

4   1736 Softwood Way, caused by the real estate of real estate taxes or assessments

5   imposed by a governmental authority due or payable, but unpaid.  Despite this

6   agreement, Defendant refused to pay Plaintiff's losses related to a covered risk.

7                                    30.

8       Plaintiff is the beneficiary of the insurance contract and has the right to receive

9   loss payment in these circumstances.

10                                   31.

11      Plaintiff has performed all of Plaintiff's obligations under the terms of the

12  Policy.  Plaintiff has presented Proofs of Loss to Defendant, and presented claims

13  under the Policy with Defendant, which have been denied.  Plaintiff has exhausted

14  Plaintiff's remedies under the Policy, short of litigation.

15                                   32.

16      Defendant has breached its contract with Plaintiff by failing to pay Plaintiff's

17  claims in accordance with the terms of the Policy.  Plaintiff has been damaged in the

18  amount of $19,103.00, or such other amount as may be proven at trial, because of

19  Defendant's failure to pay for damages which are covered under the Policy.

20                          CLAIM FOR ATTORNEY FEES

21                                   33.

22      Because settlement was not made within six (6) months of Defendant receiving

23  proof of the loss, Plaintiff is entitled to recover attorney fees, pursuant to ORS

24  742.061, as to each of Plaintiff's claims for relief.

25  WHEREFORE, Plaintiffs request the following relief:

26      1.      On Plaintiff's First Claim for Relief, judgment against Defendant in the

27              amount of $15,594.95, or such other amount as may be proven at trial;

SORENSON, RANSOM & FERGUSON, LLP
ATTORNEYS AT LAW
133 NW 'D' STREET
GRANTS PASS, OR  97526
(541) 476-3883    FAX (541) 474-4495

1      2.     On Plaintiff's Second Claim for Relief, judgment against Defendant in

2           the amount of $15,604.39 or such other amount as may be proven at

3           trial;

4      3.     On Plaintiff's Third Claim for Relief, judgment against Defendant in the

5           amount of $19,103.03 or such other amount as may be proven at trial;

6      4.     On Plaintiff's Fourth Claim for Relief, judgment against Defendant in the

7           amount of $19,103.00 or such other amount as may be proven at trial;

8      5.     For attorney fees on each claim for relief, pursuant to ORS 742.061,

9           costs and disbursements; and

10     6.     For such other relief as may be adjudged to be just and equitable.

11     Dated this 6th day of August, 2015.

12                SORENSON, RANSOM & FERGUSON, LLP

13

14                /s/ Carl A. Clyde_____

                   Carl A. Clyde

15               OSB No. 095782

                   cclyde@roguevalleylaw.com

16               Of Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

SORENSON, RANSOM & FERGUSON, LLP
ATTORNEYS AT LAW
133 NW 'D' STREET
GRANTS PASS, OR  97526
(541) 476-3883    FAX (541) 474-4495

# Ticor Title Insurance Company

## LOAN POLICY OF TITLE INSURANCE
### Issued by
### TICOR TITLE INSURANCE COMPANY

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, TICOR TITLE INSURANCE COMPANY, a California corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 11,13 and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.

2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from

    (a) A defect in the Title caused by

        (i)   forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

        (ii)   failure of any person or Entity to have authorized a transfer or conveyance;

        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

        (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;

        (v)  a document executed under a falsified, expired, or otherwise invalid power of attorney;

        (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

        (vii) a defective judicial or administrative proceeding.

    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.

    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

3. Unmarketable Title.

4. No right of access to and from the Land.

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (a) the occupancy, use, or enjoyment of the Land;

    (b) the character, dimensions, or location of any improvement erected on the Land;

    (c) the subdivision of land; or

    (d) environmental protection

    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.



8.   Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9.   The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage:

(a)  forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

(b)  failure of any person or Entity to have authorized a transfer or conveyance;

(c)  the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

(d)  failure to perform those acts necessary to create a document by electronic means authorized by law;

(e)  a document executed under a falsified, expired, or otherwise invalid power of attorney;

(f)  a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

(g)  a defective judicial or administrative proceeding.

10.  The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.

11.  The lack of priority of the lien of the Insured Mortgage upon the Title

(a)  as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either

(i)   contracted for or commenced on or before Date of Policy; or

(ii)  contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and

(b)  over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12.  The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13.  The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title

(a)  resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction crating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

(b)  because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

(i)   to be timely, or

(ii)  to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

14.  Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

|  |  |  |
|---|---|---|
| Countersigned: | Issued By:<br>Ticor Title<br>744 NE 7th St.<br>P.O. Box 1960<br>Grants Pass, OR  97528-0166 | **TICOR TITLE INSURANCE COMPANY**<br><br>By _____<br>President<br><br>Attest _____<br>Secretary |

BY: _____
Authorized Signatory

American Land Title Association Oregon Title Insurance Rating Organization (OTIRO)
ALTA Loan Policy OTIRO No. PL-05

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)    the occupancy, use, or enjoyment of the Land;

    (ii)   the character, dimensions, or location of any improvement erected on the Land;

    (iii)  the subdivision of land; or

    (iv)   environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a) created, suffered, assumed, or agreed to by the Insured Claimant;

    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c) resulting in no loss or damage to the Insured Claimant;

    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a) a fraudulent conveyance or fraudulent transfer; or

    (b) a preferential transfer for any reason not stated in Covered Risk 13(a) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## CONDITIONS

1.  **DEFINITION OF TERMS**
    The following terms when used in this policy mean:

    (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 of these Conditions.

    (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

    (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

    (d) "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of

        (i) the amount of the principal disbursed as of Date of Policy;

(ii)  the amount of the principal disbursed subsequent to Date of Policy;

(iii)  the construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;

(iv)  interest on the loan;

(v)  the prepayment premiums, exit fees, and other similar fees or penalties allowed by law;

(vi)  the expenses of foreclosure and any other costs of enforcement;

(vii)  the amount advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;

(viii)  the amounts to pay taxes and insurance; and

(ix)  the reasonable amounts expended to prevent deterioration of improvements;

but the Indebtedness is reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": The Insured named in Schedule A.

(i)  The term "Insured" also includes

(A)  the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;

(B)  the person or Entity who has "control" of the "transferable record," if the Indebtedness is evidenced by a "transferable record," as these terms are defined by applicable electronic transactions law;

(C)  successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

(D)  successors to an Insured by its conversion to another kind of Entity;

(E)  a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

(1)  if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2)  if the grantee wholly owns the named Insured, or

(3)  if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

(F)  any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;

(ii)  With regard to (A), (B), (C), (D), and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, or other matter insured against by this policy.

(f)  "Insured Claimant": An Insured claiming loss or damage.

(g)  "Insured Mortgage"; The Mortgage described in paragraph 4 of Schedule A.

(h)  "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(i)  "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j)  "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k)  "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l)  "Title": The estate or interest described in Schedule A

(m)  "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

2.  CONTINUATION OF INSURANCE
The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land; or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

3.  NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT
The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

4.  PROOF OF LOSS
In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5.  DEFENSE AND PROSECUTION OF ACTIONS
(a)  Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)  The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

Form 74-OTIRO PL-05

(c)  Whenever the Company brings an action or in ... a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6.  DUTY OF INSURED CLAIMANT TO COOPERATE

(a)  In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b)  The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7.  OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a)  To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i)  To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

(ii)  To purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay; or

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b)  To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i)  To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred

by the Insured Claimant that were authorized by the Company up to the time of p...ment and that the Company is obligated to pay; or

(ii)  To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8.  DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a)  The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i)  the Amount of Insurance;

(ii)  the Indebtedness,

(iii)  the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv)  if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b)  If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i)  the Amount of Insurance shall be increased by 10%, and

(ii)  the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c)  In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d)  In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9.  LIMITATION OF LIABILITY

(a)  If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b)  In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c)  The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

10.  REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

(a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

## 11. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Insured's Rights and Limitations

(i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c) The Company's Rights Against Noninsured Obligors

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

## 13. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 15. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 16. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 17. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at:

Ticor Title Insurance Company
P.O. Box 45023
Jacksonville, Florida 32232-5023
Attn: Claims Department.

Form 74-OTIRO PL-05

Order No. 26-62822

## SCHEDULE A

AMOUNT OF INSURANCE:    $135,000.00          DATE OF POLICY:    May 1, 2008
                                             At:                11:27 am

PREMIUM:                $350.00              POLICY NUMBER:     26-62822

1.    **NAME OF INSURED:**

      Donald L. Olson and Annette M. Olson, Trustees of the Olson Living Trust

2.    **THE ESTATE OR INTEREST IN THE LAND THAT IS ENCUMBERED BY THE INSURED MORTGAGE IS:**

      Fee.

3.    **TITLE IS VESTED IN:**

      Charbonneau Properties, LLC, an Oregon Limited Liability Company

4.    **THE INSURED MORTGAGE AND ITS ASSIGNMENTS, IF ANY, ARE DESCRIBED AS FOLLOWS:**

      Trust Deed, including the terms and provisions thereof, given to secure an indebtedness with interest thereon and such future advances as may be provided therein,

      | | |
      |---|---|
      | Grantor: | Charbonneau Properties, LLC, a Limited Liability Company |
      | Trustee: | AmeriTitle |
      | Beneficiary: | Donald L. Olson and Annette M. Olson, Trustees of the Olson Living Trust |
      | Amount: | $135,000.00 |
      | Dated: | April 28, 2008 |
      | Recorded: | May 1, 2008 |
      | Instrument No.: | 2008-007268 |

      in Josephine County, Oregon.

5.    **THE LAND REFERRED TO IN THIS POLICY IS DESCRIBED AS FOLLOWS:**

      Lot 32, SEQUOIA VILLAGE, Phase 2, a Planned Community, Josephine County, Oregon.

Order No. 26-62822

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

Except as provided in Schedule B - Part II, this policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses that arise by reason of:

### PART I:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Facts, rights, interests or claims which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.

3.  Easements, or claims of easement, not shown by the Public Records; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the subject Land.

5.  Any lien, or right to a lien, for services, labor, material, equipment rental or workers compensation heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

6.  Taxes for the fiscal year     2007-2008,
    Total amount:             $875.15
    Total unpaid balance:     $595.10, plus interest
    Account No.:             R344967 360521BD 819
    Millage Code:           01

7.  Easement as reserved in Deed,
    For:                 Irrigation Purposes
    Reserved by:        Grants Pass Irrigation District
    Recorded:           January 26, 1938
    Volume:             85      Page:  338 and 339
    in Josephine County, Oregon.

8.  An Easement created by instrument, including the terms and provisions thereof,
    In favor of:          The California Oregon Power Company
    For:                 Public Utilities
    Recorded:           August 18, 1953
    Volume:             169     Page:  14
    in Josephine County, Oregon.

Order No. 26-62822

9.   "Covenants and Agreement for Waiver of Remonstrance", including the terms and provisions thereof,
     Recorded:              September 8, 1995
     Instrument No.:        95-15105
     Records of Josephine County, Oregon.

10.  "Ordinance No. 5149" amending Advanced Financed District "N" Street for Public Water, Storm Drain
     and Street Improvements in "N" Street, including the terms and provisions thereof,
     Recorded:              September 6, 2002
     Instrument No.:        2002-018474
     Records of Josephine County, Oregon.

11.  "Ordinance No. 4649" creating Advanced Financed District for the "N" Street and Storm Improvements,
     including the terms and provisions thereof,
     Recorded:              April 4, 2003
     Instrument No.:        2003-007852
     Records of Josephine County, Oregon.

12.  "Ordinance No. 5215" creating Advanced Financed District WA4366 for Water Improvements on "N"
     Street, including the terms and provisions thereof,
     Recorded:              March 1, 2004
     Instrument No.:        2004-004634
     Records of Josephine County, Oregon.

13.  "Ordinance No. 5215" creating Advanced Financed District WA4366 for Storm Improvements on "N"
     Street, including the terms and provisions thereof,
     Recorded:              March 1, 2004
     Instrument No.:        2004-004636
     Records of Josephine County, Oregon.

14.  "Ordinance No. 5215" creating Advanced Financed District WA4366 for Landscape Improvements on
     "N" Street, including the terms and provisions thereof,
     Recorded:              March 1, 2004
     Instrument No.:        2004-004637
     Records of Josephine County, Oregon.

15.  Covenants, conditions and restrictions, but omitting covenants or restrictions, if any, based upon race,
     color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin,
     ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that
     said covenant or restriction is permitted by applicable law, imposed by instrument, including the terms
     and provisions thereof,
     Recorded:              January 18, 2007
     Instrument No.:        2007-001110
     in Josephine County, Oregon.

     Said covenants, conditions and restrictions contain among other things provisions for levies and
     assessments of the Sequoia Village Homeowners' Association Home Owner's Association.

Order No. 26-62822

"Declaration of Annexation of Phase 2 of Sequoia Village", including the terms and provisions thereof,
Recorded:                           April 20, 2007
Instrument No.:                     2007-007885
Records of Josephine County, Oregon.

16.    Party Wall Agreement, including the terms and provisions thereof,
       Recorded:                           January 18, 2007
       Instrument No.:                     2007-001110
       in Josephine County, Oregon.

17.    The by-laws, including the terms and provisions thereof, of SEQUOIA VILLAGE, Phases 1 through 4, a
       Planned Community, In Grants Pass, Oregon,
       Recorded:                           April 27, 2007
       Instrument No.:                     2007-008367
       in Josephine County, Oregon.

18.    Easement as delineated or dedicated on the recorded plat,
       For:                                Reciprocal Access/Maintenance and City Utilities


## PART II:


In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and
the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of
the Insured Mortgage:

a.    NONE

## END OF EXCEPTIONS

LAGE

PC

PHASE

N0°16'58"W  86.72'
86.68'
86.64'
86.59'
N0°16'58"W  86.54'
86.50'
86.46'
86.41'
86.36'
N0°16'58"W  86.32'

37.79'  5    6  18.00'   7  18.00   8  23.00'   9  23.00'  10  18.00'  11  18.00'  12  23.00'  13  23.00'  14  18.00'   38.21'

N89°35'28"E

N

TICOR TITLE
This map and the accompanying
legal description are provided solely
to assist in locating the subject property.
Ticor Title assumes no liability for discrepancies.

SOFTWOOD                                    WAY

46'

SEQUOIA

73.05'          15.34'    23.00'   18.00'   18.00'      41.00'           69.60'

820       819     818      817              839
0.04Ac.   0.03Ac. 0.03Ac.  0.08Ac.          0.54Ac.

44.9'

N89°35'28"E   34
82.05'

82.00'    82.00'   82.00'   82.00'

04Ac.

35
82.05'

23.00'

N0°24'32"W

SUBJECT PROPERTY

TRACT "B"
COMMON AREA

82.00'

N0°24'32"W

04Ac.

36
82.05'

23.00'

33       32       31               30
23.00'   18.00'   18.00'    41.00'

N89°35'28"E

37
82.05'

18.0'

03Ac.

38
82.05'

18.00'

03Ac.

N89°35'28"E

VILLAGE

PC

PHASE 2

04Ac.

39
82.05'

23.0'

N89°35'28"E

05'     18.00'   18.00'   23.00'   23.00'   18.00'   18.00'   23.00'        23.00'   16.00'   16.00'   32.9

828      829      830      831      832      833      834        835      836      837      838
0.04Ac.  0.04Ac.  0.04Ac.  0.04Ac.  0.04Ac.  0.04Ac.  0.04Ac.    0.04Ac.  0.04Ac.  0.04Ac.  0.06

6Ac.

S0°24'32"E  83.93'
83.93'
83.93'
83.90'
83.90'
83.90'
83.90'
83.90'

S0°24'32"E  83.90'
83.90'
83.90'
S0°24'32"E

N89°35'28"E

# Ticor Title Insurance Company

LOAN POLICY OF TITLE INSURANCE
Issued by
**TICOR TITLE INSURANCE COMPANY**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.

COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, TICOR TITLE INSURANCE COMPANY, a California corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 11, 13 and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1.  Title being vested other than as stated in Schedule A.

2.  Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from

    (a) A defect in the Title caused by

        (i)   forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

        (ii)  failure of any person or Entity to have authorized a transfer or conveyance;

        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

        (iv)  failure to perform those acts necessary to create a document by electronic means authorized by law;

        (v)   a document executed under a falsified, expired, or otherwise invalid power of attorney;

        (vi)  a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

        (vii) a defective judicial or administrative proceeding.

    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.

    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

3.  Unmarketable Title.

4.  No right of access to and from the Land.

5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (a) the occupancy, use, or enjoyment of the Land;

    (b) the character, dimensions, or location of any improvement erected on the Land;

    (c) the subdivision of land; or

    (d) environmental protection

    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7.  The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

PLAINTIFF'S
EXHIBIT
2
PENGAD 800-631-6989

American Land Title Association Oregon Title Insurance Rating Organization (OTIRO)
ALTA Loan Policy OTIRO No. PL-05
6-17-2006

8.  Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9.  The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage:

   (a)  forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

   (b)  failure of any person or Entity to have authorized a transfer or conveyance;

   (c)  the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

   (d)  failure to perform those acts necessary to create a document by electronic means authorized by law;

   (e)  a document executed under a falsified, expired, or otherwise invalid power of attorney;

   (f)  a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

   (g)  a defective judicial or administrative proceeding.

10.  The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.

11.  The lack of priority of the lien of the Insured Mortgage upon the Title

   (a)  as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either

      (i)  contracted for or commenced on or before Date of Policy; or

      (ii)  contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and

   (b)  over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12.  The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13.  The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title

   (a)  resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction crating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

   (b)  because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

      (i)  to be timely, or

      (ii)  to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

14.  Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

Countersigned:

Issued By:
Ticor Title
744 NE 7th St.
P.O. Box 1960
Grants Pass, OR  97528-0166

TICOR TITLE INSURANCE COMPANY

By _____

                                    President

Attest _____

                                    Secretary

BY: _____

Authorized Signatory

American Land Title Association Oregon Title Insurance Rating Organization (OTIRO)
ALTA Loan Policy OTIRO No. PL-05

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   (i) the occupancy, use, or enjoyment of the Land;

   (ii) the character, dimensions, or location of any improvement erected on the Land;

   (iii) the subdivision of land; or

   (iv) environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

   (a) created, suffered, assumed, or agreed to by the Insured Claimant;

   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

   (c) resulting in no loss or damage to the Insured Claimant;

   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

   (a) a fraudulent conveyance or fraudulent transfer: or

   (b) a preferential transfer for any reason not stated in Covered Risk 13(a) of this policy.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## CONDITIONS

1. **DEFINITION OF TERMS**
   The following terms when used in this policy mean:

   (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 of these Conditions.

   (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

   (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

   (d) "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of

   (i) the amount of the principal disbursed as of Date of Policy;

(ii)   the amount of the principal disbursed subsequent to Date of Policy;

(iii)  the construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;

(iv)   interest on the loan;

(v)    the prepayment premiums, exit fees, and other similar fees or penalties allowed by law;

(vi)   the expenses of foreclosure and any other costs of enforcement;

(vii)  the amount advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;

(viii) the amounts to pay taxes and insurance; and

(ix)   the reasonable amounts expended to prevent deterioration of improvements;

but the Indebtedness is reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": The Insured named in Schedule A.

(i)    The term "Insured" also includes

(A)  the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;

(B)  the person or Entity who has "control" of the "transferable record," if the Indebtedness is evidenced by a "transferable record," as these terms are defined by applicable electronic transactions law;

(C)  successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

(D)  successors to an Insured by its conversion to another kind of Entity;

(E)  a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

(1)  if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2)  if the grantee wholly owns the named Insured, or

(3)  if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

(F)  any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;

(ii)  With regard to (A), (B), (C), (D), and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, or other matter insured against by this policy.

(f)  "Insured Claimant": An Insured claiming loss or damage.

(g)  "Insured Mortgage": The Mortgage described in paragraph 4 of Schedule A.

(h)  "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(i)  "Land": The land described in Schedule A, and affixed improvements that by law constitute property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting sheets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j)  "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k)  "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l)  "Title": The estate or interest described in Schedule A

(m)  "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

2.  CONTINUATION OF INSURANCE
The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land; or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

3.  NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT
The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

4.  PROOF OF LOSS
In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5.  DEFENSE AND PROSECUTION OF ACTIONS
(a)  Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)  The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or u... a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6. **DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

(ii) To purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay; or

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred

by the Insured Claimant that were authorized by the Company up to the time of p... ent and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8. **DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i) the Amount of Insurance;

(ii) the Indebtedness,

(iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d) In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. **LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

10. **REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a)   All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b)   The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

11.   PAYMENT OF LOSS
When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

12.   RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT
(a)   The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b)   The Insured's Rights and Limitations

(i)   The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii)   If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c)   The Company's Rights Against Noninsured Obligors

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section l(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

13.   ARBITRATION
Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

Form 74-OTIRO PL-05

14.   LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT
(a)   This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)   Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.

(c)   Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d)   Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

15.   SEVERABILITY
In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

16.   CHOICE OF LAW; FORUM
(a)   Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b)   Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

17.   NOTICES, WHERE SENT
Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at

Ticor Title Insurance Company
P.O. Box 45023
Jacksonville, Florida 32232-5023
Attn: Claims Department.

Order No. 26-62819

## SCHEDULE A

| | | | |
|---|---|---|---|
| AMOUNT OF INSURANCE: | $135,000.00 | DATE OF POLICY:<br>At: | April 29, 2008<br>03:38 pm |
| PREMIUM: | $350.00 | POLICY NUMBER: | 26-62819 |

1. **NAME OF INSURED:**

   Donald L. Olson and Annette M. Olson, Trustees of the Olson Living Trust

2. **THE ESTATE OR INTEREST IN THE LAND THAT IS ENCUMBERED BY THE INSURED MORTGAGE IS:**

   Fee.

3. **TITLE IS VESTED IN:**

   Charbonneau Properties, LLC, an Oregon Limited Liability Company

4. **THE INSURED MORTGAGE AND ITS ASSIGNMENTS, IF ANY, ARE DESCRIBED AS FOLLOWS:**

   Trust Deed, including the terms and provisions thereof, given to secure an indebtedness with interest thereon and such future advances as may be provided therein,

   | | |
   |---|---|
   | Grantor: | Charbonneau Properties, LLC |
   | Trustee: | AmeriTitle, an Oregon Corporation |
   | Beneficiary: | Donald L. Olson and Annette M. Olson, Trustees of the Olson Living Trust |
   | Amount: | $135,000.00 |
   | Dated: | April 28, 2008 |
   | Recorded: | April 29, 2008 |
   | Instrument No.: | 2008-007139 |

   in Josephine County, Oregon.

5. **THE LAND REFERRED TO IN THIS POLICY IS DESCRIBED AS FOLLOWS:**

   Lot 37, SEQUOIA VILLAGE, Phase 2, a Planned Community, Josephine County, Oregon.

Order No. 26-62819

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

Except as provided in Schedule B - Part II, this policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses that arise by reason of:

### PART I:

1.   Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.   Facts, rights, interests or claims which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.

3.   Easements, or claims of easement, not shown by the Public Records; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.

4.   Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the subject Land.

5.   Any lien, or right to a lien, for services, labor, material, equipment rental or workers compensation heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

6.   Taxes for the fiscal year      2007-2008,
     Total amount:                  $887.27
     Total unpaid balance:          $603.34, plus interest
     Account No.:                   R344972 360521BD 824
     Millage Code:                  01

7.   Easement as reserved in Deed,
     For:                           Irrigation Purposes
     Reserved by:                   Grants Pass Irrigation District
     Recorded:                      January 26, 1938
     Volume:                        85      Page:  338 and 339
     in Josephine County, Oregon.

8.   An Easement created by instrument, including the terms and provisions thereof,
     In favor of:                   The California Oregon Power Company
     For:                           Public Utilities
     Recorded:                      August 18, 1953
     Volume:                        169     Page:  14
     in Josephine County, Oregon.

Order No. 26-62819

9.  "Covenants and Agreement for Waiver of Remonstrance", including the terms and provisions thereof,
    Recorded:                    September 8, 1995
    Instrument No.:              95-15105
    Records of Josephine County, Oregon.

10. "Ordinance No. 5149" amending Advanced Financed District "N" Street for Public Water, Storm Drain
    and Street Improvements in "N" Street, including the terms and provisions thereof,
    Recorded:                    September 6, 2002
    Instrument No.:              2002-018474
    Records of Josephine County, Oregon.

11. "Ordinance No. 4649" creating Advanced Financed District for the "N" Street and Storm Improvements,
    including the terms and provisions thereof,
    Recorded:                    April 4, 2003
    Instrument No.:              2003-007852
    Records of Josephine County, Oregon.

12. "Ordinance No. 5215" creating Advanced Financed District WA4366 for Water Improvements on "N"
    Street, including the terms and provisions thereof,
    Recorded:                    March 1, 2004
    Instrument No.:              2004-004634
    Records of Josephine County, Oregon.

13. "Ordinance No. 5215" creating Advanced Financed District WA4366 for Storm Improvements on "N"
    Street, including the terms and provisions thereof,
    Recorded:                    March 1, 2004
    Instrument No.:              2004-004636
    Records of Josephine County, Oregon.

14. "Ordinance No. 5215" creating Advanced Financed District WA4366 for Landscape Improvements on
    "N" Street, including the terms and provisions thereof,
    Recorded:                    March 1, 2004
    Instrument No.:              2004-004637
    Records of Josephine County, Oregon.

15. Covenants, conditions and restrictions, but omitting covenants or restrictions, if any, based upon race,
    color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin,
    ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that
    said covenant or restriction is permitted by applicable law, imposed by instrument, including the terms
    and provisions thereof,
    Recorded:                    January 18, 2007
    Instrument No.:              2007-001110
    in Josephine County, Oregon.

    Said covenants, conditions and restrictions contain among other things provisions for levies and
    assessments of the Sequoia Village Homeowners' Association Home Owner's Association.

Order No. 26-62819

"Declaration of Annexation of Phase 2 of Sequoia Village", including the terms and provisions thereof,
Recorded:                April 20, 2007
Instrument No.:          2007-007885
Records of Josephine County, Oregon.

16.    Party Wall Agreement, including the terms and provisions thereof,
Recorded:                January 18, 2007
Instrument No.:          2007-001110
in Josephine County, Oregon.

17.    The by-laws, including the terms and provisions thereof, of D
Recorded:                April 27, 2007
Instrument No.:          2007-008367
in Josephine County, Oregon.

18.    Easement as delineated or dedicated on the recorded plat,
For:                     Reciprocal Access/Maintenance and City Utilities

## PART II:

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

a.    NONE

## END OF EXCEPTIONS



WAY

SEQUOIA

N89°43'03"E
99.53'    4

99.52'    3

99.52'    2

N0°24'32"W

37.02'

18.00'

18.00'

25.00'

99.51'
N89°43'02"E    1

VILLAGE

66.80'

N0°16'16"W
86.72'

86.68'

86.64'

86.59'

37.79'    5

6
18.00'

7
18.00'

23.00'    8

23.00'

0.04Ac.

0.04Ac.

46'

SOFTWOOD

N
TICOR TITLE
This map and the accompanying
legal description are provided solely
to assist in locating the subject property.
Ticor Title assumes no liability for discrepancies.

216.10'

S0°24'32"E

CATHERINE

46'

821
0.08Ac.

73.05'

35.99'

SEQUOIA

15.34'

820
0.04Ac.

23.00'

81
0.0

N89°35'28"E
82.05'    34

822
0.04Ac.

23.00'

23.00'

44.99'

82.00'

82.00'

33
23.00'

82.00'

18

N0°24'32"W

35

82.05'

823
0.04Ac.

23.00'

23.00'

36

824
0.03Ac.

15.00'

82.05'

SUBJECT PROPERTY

37

82.05'

825
0.03Ac.

16.00'

16.00'

18.00'

VILLAGE

38

82.05'
N89°35'28"E

826
0.04Ac.

23.00'

23.00'

39

82.05'

N89°35'28"E

28.05'

827
0.06Ac.

34.70'

0°24'32"E
83.93'

18.00'

828
0.04Ac.

83.93'

18.00'

829
0.04Ac.

83.93'

23.00'

830
0.04Ac.

83.90'

23.00'

831
0.04Ac.

83.90'

18.00'

832
0.04Ac.

83.90'



# Ticor Title Insurance Company

LOAN POLICY OF TITLE INSURANCE
Issued by
TICOR TITLE INSURANCE COMPANY

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, TICOR TITLE INSURANCE COMPANY, a California corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 11, 13 and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1.  Title being vested other than as stated in Schedule A.

2.  Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from

    (a)  A defect in the Title caused by

         (i)   forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

         (ii)  failure of any person or Entity to have authorized a transfer or conveyance;

         (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

         (iv)  failure to perform those acts necessary to create a document by electronic means authorized by law;

         (v)   a document executed under a falsified, expired, or otherwise invalid power of attorney;

         (vi)  a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

         (vii) a defective judicial or administrative proceeding.

    (b)  The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.

    (c)  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

3.  Unmarketable Title.

4.  No right of access to and from the Land.

5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (a)  the occupancy, use, or enjoyment of the Land;

    (b)  the character, dimensions, or location of any improvement erected on the Land;

    (c)  the subdivision of land; or

    (d)  environmental protection

    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7.  The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

PLAINTIFF'S
EXHIBIT
3
PENGAD 800-631-6989

American Land Title Association Oregon Title Insurance Rating Organization (OTIRO)
ALTA Loan Policy OTIRO No. PL-05
6-17-2006

8.  Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9.  The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage:

   (a)  forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

   (b)  failure of any person or Entity to have authorized a transfer or conveyance;

   (c)  the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

   (d)  failure to perform those acts necessary to create a document by electronic means authorized by law;

   (e)  a document executed under a falsified, expired, or otherwise invalid power of attorney;

   (f)  a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

   (g)  a defective judicial or administrative proceeding.

10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.

11. The lack of priority of the lien of the Insured Mortgage upon the Title

   (a)  as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either

       (i)  contracted for or commenced on or before Date of Policy; or

       (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and

   (b)  over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13. The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title

   (a)  resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction crating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

   (b)  because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

       (i)  to be timely, or

       (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

14. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

|  | Issued By: | **TICOR TITLE INSURANCE COMPANY** |
|---|---|---|
| Countersigned: | Ticor Title | |
| | 744 NE 7th St. | |
| | P.O. Box 1960 | By _____ |
| | Grants Pass, OR  97528-0166 | |
| | | President |
| | | Attest |
| BY: _Judy Lycett_ | | _____ |
| Authorized Signatory | | Secretary |

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)   the occupancy, use, or enjoyment of the Land;

    (ii)  the character, dimensions, or location of any improvement erected on the Land;

    (iii) the subdivision of land; or

    (iv)  environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a)  a fraudulent conveyance or fraudulent transfer; or

    (b)  a preferential transfer for any reason not stated in Covered Risk 13(a) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## CONDITIONS

1.  **DEFINITION OF TERMS**
    The following terms when used in this policy mean:

    (a)  "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 of these Conditions.

    (b)  "Date of Policy": The date designated as "Date of Policy" in Schedule A.

    (c)  "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

    (d)  "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of

        (i)   the amount of the principal disbursed as of Date of Policy;

(ii)  the amount of the principal disbursed subsequent to Date of Policy;

(iii)  the construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;

(iv)  interest on the loan;

(v)  the prepayment premiums, exit fees, and other similar fees or penalties allowed by law;

(vi)  the expenses of foreclosure and any other costs of enforcement;

(vii)  the amount advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of these estate or interest in the Title;

(viii)  the amounts to pay taxes and insurance; and

(ix)  the reasonable amounts expended to prevent deterioration of improvements;

but the Indebtedness is reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": The Insured named in Schedule A.

(i)  The term "Insured" also includes

(A)  the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;

(B)  the person or Entity who has "control" of the "transferable record," if the Indebtedness is evidenced by a "transferable record," as these terms are defined by applicable electronic transactions law;

(C)  successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

(D)  successors to an Insured by its conversion to another kind of Entity;

(E)  a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

(1)  if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2)  if the grantee wholly owns the named Insured, or

(3)  if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

(F)  any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;

(ii)  With regard to (A), (B), (C), (D), and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, or other matter insured against by this policy.

(f)  "Insured Claimant": An Insured claiming loss or damage.

(g)  "Insured Mortgage"; The Mortgage described in paragraph 4 of Schedule A.

(h)  "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(i)  "Land": The land described in Schedule A, and affixed improvements that by law constitute a property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting sheets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j)  "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k)  "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l)  "Title": The estate or interest described in Schedule A

(m)  "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

2.  **CONTINUATION OF INSURANCE**
The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land; or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

3.  **NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**
The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

4.  **PROOF OF LOSS**
In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

5.  **DEFENSE AND PROSECUTION OF ACTIONS**
(a)  Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)  The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or as... a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6. **DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

(ii) To purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay; or

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred

by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8. **DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i) the Amount of Insurance;

(ii) the Indebtedness,

(iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d) In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. **LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

10. **REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a)  All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b)  The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

## 11. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a)  The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b)  The Insured's Rights and Limitations

(i)   The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii)  If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c)  The Company's Rights Against Noninsured Obligors

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

## 13. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a)  This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)  Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.

(c)  Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d)  Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 15. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 16. CHOICE OF LAW; FORUM

(a)  Choice of Law: The Company acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b)  Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 17. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at

Ticor Title Insurance Company
P.O. Box 45023
Jacksonville, Florida 32232-5023
Attn: Claims Department.

Form 74-OTIRO PL-05

Order No. 26-60393

## SCHEDULE A

| | | | |
|---|---|---|---|
| AMOUNT OF INSURANCE: | $125,000.00 | DATE OF POLICY:<br>At: | August 30, 2007<br>10:31 a.m. |
| PREMIUM: | $100.00 | POLICY NUMBER: | 26-60393 |

1.    **NAME OF INSURED:**

Donald L. Olson and Annette M. Olson, Trustees of the Olson Living Trust as to aun undivided 50%
interest and Donald J. Valco, Trustee of the Donald J. Valco Trust utad 1/11/99 as to an undivided 50%

2.    **THE ESTATE OR INTEREST IN THE LAND THAT IS ENCUMBERED BY THE INSURED
MORTGAGE IS:**

Fee.

3.    **TITLE IS VESTED IN:**

Daniel Charbonneau, an estate in fee simple

4.    **THE INSURED MORTGAGE AND ITS ASSIGNMENTS, IF ANY, ARE DESCRIBED AS
FOLLOWS:**

Trust Deed, including the terms and provisions thereof, given to secure an indebtedness with interest
thereon and such future advances as may be provided therein,
Grantor:                  Daniel Charbonneau
Trustee:                  AmeriTitle
Beneficiary:              Donald L. Olson and Annette M. Olson, Trustees of the Olson Living
                          Trust as to aun undivided 50% interest and Donald J. Valco, Trustee of
                          the Donald J. Valco Trust utad 1/11/99 as to an undivided 50%
Amount:                   $125,000.00
Dated:                    August 27, 2007
Recorded:                 August 30, 2007
Instrument No.:           2007-017096
in Josephine County, Oregon.

5.    **THE LAND REFERRED TO IN THIS POLICY IS DESCRIBED AS FOLLOWS:**

Lot 42, SEQUOIA VILLAGE, Phase 2, a Planned Community, Josephine County, Oregon.

Order No. 26-60393

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

Except as provided in Schedule B - Part II, this policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses that arise by reason of:

### PART I:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Facts, rights, interests or claims which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.

3.  Easements, or claims of easement, not shown by the Public Records; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the subject Land.

5.  Any lien, or right to a lien, for services, labor, material, equipment rental or workers compensation heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

6.  Taxes for the fiscal year 2007-2008, a lien in an amount to be determined, but not yet payable.

7.  Easement as reserved in Deed,
    For:                Irrigation Purposes
    Reserved by:        Grants Pass Irrigation District
    Recorded:           January 26, 1938
    Volume:             85      Page:  338 and 339
    in Josephine County, Oregon.

8.  An Easement created by instrument, including the terms and provisions thereof,
    In favor of:        The California Oregon Power Company
    For:                Public Utilities
    Recorded:           August 18, 1953
    Volume:             169     Page:  14
    in Josephine County, Oregon.

9.  "Sewer Service Agreement", including the terms and provisions thereof,
    Recorded:           January 28, 1981
    Instrument No.:     81-01357
    Amended:            March 17, 1981
    Instrument No.:     81-04315
    Records of Josephine County, Oregon.

Order No. 26-60393

10. "Covenants and Agreement for Waiver of Remonstrance", including the terms and provisions thereof,
    Recorded:              September 8, 1995
    Instrument No.:        95-15105
    Records of Josephine County, Oregon.

11. "Ordinance No. 5149" amending Advanced Financed District "N" Street for Public Water, Storm Drain
    and Street Improvements in "N" Street, including the terms and provisions thereof,
    Recorded:              September 6, 2002
    Instrument No.:        2002-018474
    Records of Josephine County, Oregon.

12. "Ordinance No. 4649" creating Advanced Financed District for the "N" Street and Storm Improvements,
    including the terms and provisions thereof,
    Recorded:              April 4, 2003
    Instrument No.:        2003-007852
    Records of Josephine County, Oregon.

13. "Ordinance No. 4649" creating Advanced Financed District for the "N" Street and Storm Improvements,
    including the terms and provisions thereof,
    Recorded:              April 4, 2003
    Instrument No.:        2003-007852
    Records of Josephine County, Oregon.

14. "Ordinance No. 5215" creating Advanced Financed District WA4366 for Water Improvements on "N"
    Street, including the terms and provisions thereof,
    Recorded:              March 1, 2004
    Instrument No.:        2004-004634
    Records of Josephine County, Oregon.

15. "Ordinance No. 5215" creating Advanced Financed District WA4366 for Storm Improvements on "N"
    Street, including the terms and provisions thereof,
    Recorded:              March 1, 2004
    Instrument No.:        2004-004636
    Records of Josephine County, Oregon.

16. "Ordinance No. 5215" creating Advanced Financed District WA4366 for Landscape Improvements on
    "N" Street, including the terms and provisions thereof,
    Recorded:              March 1, 2004
    Instrument No.:        2004-004637
    Records of Josephine County, Oregon.

Order No. 26-60393

17. Covenants, conditions and restrictions, but omitting covenants or restrictions, if any, based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, imposed by instrument, including the terms and provisions thereof,
   Recorded:                    January 18, 2007
   Instrument No.:              2007-001110
   in Josephine County, Oregon.

   Said covenants, conditions and restrictions contain among other things provisions for levies and assessments of the Sequoia Village Homeowners' Association Home Owner's Association.

   "Declaration of Annexation of Phase 2 of Sequoia Village", including the terms and provisions thereof,
   Recorded:                    April 20, 2007
   Instrument No.:              2007-007885
   Records of Josephine County, Oregon.

18. Party Wall Agreement, including the terms and provisions thereof,
   Recorded:                    January 18, 2007
   Instrument No.:              2007-001110
   in Josephine County, Oregon.

19. The by-laws, including the terms and provisions thereof, of SEQUOIA VILLAGE, Phases 1 through 4, a Planned Community, In Grants Pass, Oregon,
   Recorded:                    April 27, 2007
   Instrument No.:              2007-008367
   in Josephine County, Oregon.

20. Easement as delineated or dedicated on the recorded plat,
   For:                         Reciprocal Access/Maintenance and City Utilities

21. The by-laws, including the terms and provisions thereof, of SEQUOIA VILLAGE, Phases 1 through 4, a Planned Community, In Grants Pass, Oregon,
   Recorded:                    April 27, 2007
   Instrument No.:              2007-008367
   in Josephine County, Oregon.


**PART II:**

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

a.   NONE

**END OF EXCEPTIONS**


American Land Title Association
ALTA Loan Policy (6-17-2006)

Oregon Title Insurance Rating Organization (OTIRO)
OTIRO No. PL-05
Policy No. 26-60393

8.21
0.08 Ac.

SEQUOIA

35.99'

44.9 9'

73.05'

15.34'

23.00'
820
0.04 Ac.
82.00'

819
0.03 Ac.
82.00'

818
0.03 Ac.
82.00'

41.00'
817
0.08 Ac.
82.00'

N89°35'28"E    34
82.05'

822
0.04 Ac.
23.00'

23.00'
35

N0°24'32"W

33
23.00'

32
18.00'

31
18.00'

41.00'

N89°35'28"E

823
0.04 Ac.
23.00'

23.00'
36

824
0.03 Ac.
18.00'

18.00'
37

VILLAGE    N
TICOR TITLE

This map and the accompanying
legal description are provided solely
to assist in locating the subject property.
Ticor Title assumes no liability for discrepancies.

825
0.03 Ac.
18.00'

18.00'
38

N89°35'23"E
82.05'

826
0.04 Ac.
23.00'

23.00'
39

82.05'

N89°35'28"E

28.05'
827
0.06 Ac.

34.70'

18.00'
828
0.04 Ac.

S0°24'32"E
83.93'

18.00'
829
0.04 Ac.
83.53'

23.00'
830
0.04 Ac.
83.93'

SUBJECT PROPERTY

23.00'
831
0.04 Ac.
83.90'

18.00'
832
0.04 Ac.
83.90'

18.00'
833
0.04 Ac.
83.90'

23.00'
834
0.04 Ac.
83.90'

S0°24'32"E
83.90'

CATHERINE

46'

216.10'

S0°24'32"E

26.91'

23.18'

40
20.06'

41
18.00'

42
18.00'

43
23.00'

44
23.00'

45
18.00'

46
18.00'

47
23.00'

15.00'

N89°35'28"E

KIDS    46'

TRACT "A"

49.59'

84.92'

46'

TRAC

 **Ticor Title Insurance Company**

---

**LOAN POLICY OF TITLE INSURANCE**
Issued by
**TICOR TITLE INSURANCE COMPANY**

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, TICOR TITLE INSURANCE COMPANY, a California corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 11,13 and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.

2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from

    (a) A defect in the Title caused by

        (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

        (ii) failure of any person or Entity to have authorized a transfer or conveyance;

        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

        (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;

        (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;

        (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

        (vii) a defective judicial or administrative proceeding.

    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.

    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.

3. Unmarketable Title.

4. No right of access to and from the Land.

5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (a) the occupancy, use, or enjoyment of the Land:

    (b) the character, dimensions, or location of any improvement erected on the Land;

    (c) the subdivision of land; or

    (d) environmental protection

    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.

7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.

PLAINTIFF'S
EXHIBIT
4
PENGAD 800-631-6989

American Land Title Association Oregon Title Insurance Rating Organization (OTIRO)
ALTA Loan Policy OTIRO No. PL-05
6-17-2006

8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.

9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage:

    (a) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

    (b) failure of any person or Entity to have authorized a transfer or conveyance;

    (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;

    (d) failure to perform those acts necessary to create a document by electronic means authorized by law;

    (e) a document executed under a falsified, expired, or otherwise invalid power of attorney;

    (f) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or

    (g) a defective judicial or administrative proceeding.

10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.

11. The lack of priority of the lien of the Insured Mortgage upon the Title

    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either

        (i) contracted for or commenced on or before Date of Policy; or

        (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and

    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13. The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title

    (a) resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction crating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or

    (b) because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

        (i) to be timely, or

        (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

14. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

|  |  |  |
|---|---|---|
| Countersigned: | Issued By:<br>Ticor Title<br>744 NE 7th St.<br>P.O. Box 1960<br>Grants Pass, OR  97528-0166 | **TICOR TITLE INSURANCE COMPANY**<br><br>By _____<br>                President<br><br>Attest _____<br>                Secretary |

BY: _____
Authorized Signatory

# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i) the occupancy, use, or enjoyment of the Land;

    (ii) the character, dimensions, or location of any improvement erected on the Land;

    (iii) the subdivision of land; or

    (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

    (a) created, suffered, assumed, or agreed to by the Insured Claimant;

    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c) resulting in no loss or damage to the Insured Claimant;

    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a) a fraudulent conveyance or fraudulent transfer: or

    (b) a preferential transfer for any reason not stated in Covered Risk 13(a) of this policy.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

# CONDITIONS

1. **DEFINITION OF TERMS**
   The following terms when used in this policy mean:

   (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 of these Conditions.

   (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

   (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

   (d) "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of

       (i) the amount of the principal disbursed as of Date of Policy;

(ii)   the amount of the principal disbursed subsequent to Date of Policy;

(iii)  the construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;

(iv)  interest on the loan;

(v)   the prepayment premiums, exit fees, and other similar fees or penalties allowed by law;

(vi)  the expenses of foreclosure and any other costs of enforcement;

(vii) the amount advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;

(viii) the amounts to pay taxes and insurance; and

(ix)  the reasonable amounts expended to prevent deterioration of improvements;

but the Indebtedness is reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": The Insured named in Schedule A.

  (i)   The term "Insured" also includes

     (A)  the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;

     (B)  the person or Entity who has "control" of the "transferable record," if the Indebtedness is evidenced by a "transferable record," as these terms are defined by applicable electronic transactions law;

     (C)  successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

     (D)  successors to an Insured by its conversion to another kind of Entity;

     (E)  a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

        (1)  if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

        (2)  if the grantee wholly owns the named Insured, or

        (3)  if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

     (F)  any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;

  (ii)  With regard to (A), (B), (C), (D), and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, or other matter insured against by this policy.

(f)  "Insured Claimant": An Insured claiming loss or damage.

(g)  "Insured Mortgage"; The Mortgage described in paragraph 4 of Schedule A.

(h)  "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(i)  "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j)  "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k)  "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l)  "Title": The estate or interest described in Schedule A

(m)  "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

**2.  CONTINUATION OF INSURANCE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land; or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

**3.  NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4.  PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5.  DEFENSE AND PROSECUTION OF ACTIONS**

(a)  Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)  The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

Form 74-OTIRO PL-05

(c)   Whenever the Company brings an action or a ... a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a)   In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b)   The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a)   To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i)   To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

(ii)   To purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay; or

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b)   To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i)   To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred

by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii)   To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

## 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a)   The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i)   the Amount of Insurance;

(ii)   the Indebtedness,

(iii)   the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv)   if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b)   If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i)   the Amount of Insurance shall be increased by 10%, and

(ii)   the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c)   In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d)   In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9. LIMITATION OF LIABILITY

(a)   If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b)   In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c)   The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

(a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

## 11. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Insured's Rights and Limitations

(i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral securith for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c) The Company's Rights Against Noninsured Obligors

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

## 13. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 15. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 16. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 17. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at

Ticor Title Insurance Company
P.O. Box 45023
Jacksonville, Florida 32232-5023
Attn: Claims Department.

Form 74-OTIRO PL-05

Order No. 26-64437

## SCHEDULE A

| | | | |
|---|---|---|---|
| AMOUNT OF INSURANCE: | $175,000.00 | DATE OF POLICY:<br>At: | November 19, 2008<br>03:42 pm |
| PREMIUM: | $415.00 | POLICY NUMBER: | 26-64437 |

1.  **NAME OF INSURED:**

    Donald L. Olson and Annette M. Olson, Trustees of the Olson Living Trust  its successors and assigns as may be included within the definition of insured in Section 1 (a).

2.  **THE ESTATE OR INTEREST IN THE LAND THAT IS ENCUMBERED BY THE INSURED MORTGAGE IS:**

    Fee.

3.  **TITLE IS VESTED IN:**

    Charbonneau Properties, LLC, an Oregon Limited Liability Company

4.  **THE INSURED MORTGAGE AND ITS ASSIGNMENTS, IF ANY, ARE DESCRIBED AS FOLLOWS:**

    Trust Deed, including the terms and provisions thereof, given to secure an indebtedness with interest thereon and such future advances as may be provided therein,

    | | |
    |---|---|
    | Grantor: | Charbonneau Properties, LLC an Oregon Limited Liability |
    | Trustee: | Amerititle, an Oregon Corporation |
    | Beneficiary: | Donald L. Olson and Annette M. Olson, Trustees of the Olson Living Trust |
    | Amount: | $175,000.00 |
    | Dated: | November 18, 2008 |
    | Recorded: | November 19, 2008 |
    | Instrument No.: | 2008-017530 |

    in Josephine County, Oregon.

5.  **THE LAND REFERRED TO IN THIS POLICY IS DESCRIBED AS FOLLOWS:**

    Lot 47, SEQUOIA VILLAGE, Phase 2, a Planned Community, Josephine County, Oregon.

Order No. 26-64437

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

Except as provided in Schedule B - Part II, this policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses that arise by reason of:

### PART I:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Facts, rights, interests or claims which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.

3. Easements, or claims of easement, not shown by the Public Records; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the subject Land.

5. Any lien, or right to a lien, for services, labor, material, equipment rental or workers compensation heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

6. Easement as reserved in Deed,
   For:                        Irrigation Purposes
   Reserved by:                Grants Pass Irrigation District
   Recorded:                   January 26, 1938
   Volume:                     85      Page:  338 and 339
   in Josephine County, Oregon.

7. An Easement created by instrument, including the terms and provisions thereof,
   In favor of:                The California Oregon Power Company
   For:                        Public Utilities
   Recorded:                   August 18, 1953
   Volume:                     169    Page:  14
   in Josephine County, Oregon.

8. "Covenants and Agreement for Waiver of Remonstrance", including the terms and provisions thereof,
   Recorded:                   September 8, 1995
   Instrument No.:             95-15105
   Records of Josephine County, Oregon.

Order No. 26-64437

9.    "Ordinance No. 5149" amending Advanced Financed District "N" Street for Public Water, Storm Drain
      and Street Improvements in "N" Street, including the terms and provisions thereof,
      Recorded:                    September 6, 2002
      Instrument No.:              2002-018474
      Records of Josephine County, Oregon.

10.   "Ordinance No. 4649" creating Advanced Financed District for the "N" Street and Storm Improvements,
      including the terms and provisions thereof,
      Recorded:                    April 4, 2003
      Instrument No.:              2003-007852
      Records of Josephine County, Oregon.

11.   "Ordinance No. 4649" creating Advanced Financed District for the "N" Street and Storm Improvements,
      including the terms and provisions thereof,
      Recorded:                    April 4, 2003
      Instrument No.:              2003-007852
      Records of Josephine County, Oregon.

12.   "Ordinance No. 5215" creating Advanced Financed District WA4366 for Water Improvements on "N"
      Street, including the terms and provisions thereof,
      Recorded:                    March 1, 2004
      Instrument No.:              2004-004634
      Records of Josephine County, Oregon.

13.   "Ordinance No. 5215" creating Advanced Financed District WA4366 for Storm Improvements on "N"
      Street, including the terms and provisions thereof,
      Recorded:                    March 1, 2004
      Instrument No.:              2004-004636
      Records of Josephine County, Oregon.

14.   "Ordinance No. 5215" creating Advanced Financed District WA4366 for Landscape Improvements on
      "N" Street, including the terms and provisions thereof,
      Recorded:                    March 1, 2004
      Instrument No.:              2004-004637
      Records of Josephine County, Oregon.

15.   "Developer Installed Agreement for Public Improvements", including the terms and provisions thereof,
      Recorded:                    April 21, 2006
      Instrument No.:              2006-008359
      Records of Josephine County, Oregon.

16.   "Temporary Easement" for installation of utilities, including the terms and provisions thereof,
      Recorded:                    October 20, 2006
      Instrument No.:              2006-021040
      Records of Josephine County, Oregon.

Order No. 26-64437

17. Easement as delineated or dedicated on the recorded plat,
    For:                    Storm Drain, Water Line and Access
    Affects:                as set forth on Sequoia Village Phase 1

18. Covenants, conditions and restrictions, but omitting covenants or restrictions, if any, based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, imposed by instrument, including the terms and provisions thereof,
    Recorded:               January 18, 2007
    Instrument No.:         2007-001110
    in Josephine County, Oregon.

    Said covenants, conditions and restrictions contain among other things provisions for levies and assessments of the Sequoia Village Homeowners' Association Home Owner's Association.

    "Declaration of Annexation of Phase 2 of Sequoia Village", including the terms and provisions thereof,
    Recorded:               April 20, 2007
    Instrument No.:         2007-007885
    Records of Josephine County, Oregon.

19. Party Wall Agreement, including the terms and provisions thereof,
    Recorded:               January 18, 2007
    Instrument No.:         2007-001110
    in Josephine County, Oregon.

20. Easement as delineated or dedicated on the recorded plat,
    For:                    Reciprocal Access/Maintenance and City Utilities

21. The by-laws, including the terms and provisions thereof, of SEQUOIA VILLAGE, Phases 1 through 4, a Planned Community, In Grants Pass, Oregon,
    Recorded:               April 27, 2007
    Instrument No.:         2007-008367
    in Josephine County, Oregon.

## PART II:

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

a.   NONE

## END OF EXCEPTIONS

American Land Title Association
ALTA Loan Policy (6-17-2006)

Oregon Title Insurance Rating Organization (OTIRO)
OTIRO No. PL-05
Policy No. 26-64437

